UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

R‌OBERT G‌RECO,

      Plaintiff,                                            Hon. Robert J. Jonker

v.                                                                   Case No. 1:23-cv-803

C‌OMMISSIONER OF
S‌OCIAL S‌ECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of Social Security appeals, the undersigned recommends that the Commissioner's decision be affirmed.

## STANDARD OF REVIEW

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *Tucker v.*

*Commissioner of Social Security*, 775 Fed. Appx. 220, 225 (6th Cir., June 10, 2019). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *Id.* at 224-25. Substantial evidence is more than a scintilla, but less than a preponderance, and constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Livingston v. Commissioner of Social Security*, 776 Fed. Appx. 897, 898 (6th Cir., June 19, 2019).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Biestek v. Commissioner of Social Security*, 880 F.3d 778, 783 (6th Cir. 2017). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Moruzzi v. Commissioner of Social Security*, 759 Fed. Appx. 396, 402 (6th Cir., Dec. 21, 2018). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Luukkonen v. Commissioner of Social Security*, 653 Fed. Appx. 393, 398 (6th Cir., June 22, 2016).

## BACKGROUND

Plaintiff was 57 years of age on his alleged disability onset date. (PageID.67). Plaintiff successfully completed college and worked previously as a hospital

pharmacist.  (*Id.*).  Plaintiff applied for benefits on November 11, 2020, alleging that he had been disabled since September 4, 2019, due to restless leg syndrome, periodic limb movement disorder, sleep deprivation, and memory and concentration impairment.  (PageID.54, 282).

Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).  Following an administrative hearing, ALJ Robert Tjapkes, in an opinion dated June 15, 2022, determined that Plaintiff did not qualify for disability benefits.  (PageID.54-105).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. ¶¶ 404.1520(a-f), 416.920(a-f).  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. ¶¶ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a non-exertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity.  *See* 20 C.F.R. ¶¶ 404.1545, 416.945.

Plaintiff bears the burden to demonstrate he is entitled to disability benefits and he satisfies his burden by demonstrating that his impairments are so severe that

he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A). While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *O'Neal v. Commissioner of Social Security*, 799 Fed. Appx. 313, 315 (6th Cir., Jan. 7, 2020).

The ALJ determined that Plaintiff suffers from (1) restless leg syndrome; (2) periodic limb movement disorder; (3) depression; and (4) anxiety, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.57-61).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the ability to perform medium work subject to the following limitations: (1) he cannot climb ladders, ropes, or scaffolds; (2) he cannot work around hazards such as unprotected heights or unguarded, moving machinery; (3) he can understand, remember, and carry out detailed but not complex instructions and tasks; (4) he cannot perform production rate work; and (5) he can tolerate occasional changes in the workplace setting.   (PageID.61).

The ALJ found that Plaintiff was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that there exists in the national economy a significant number of specific jobs which Plaintiff can perform, his limitations notwithstanding. *O'Neal*, 799 Fed. Appx. at 316. In satisfying this burden, the ALJ may rely on a vocational expert's testimony. *Ibid.*

In this case, a vocational expert testified that there existed approximately 24,200 jobs in the national economy which an individual with Plaintiff's RFC could perform. (PageID.68). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to benefits.

## I. Residual Functional Capacity

A claimant's RFC represents the "most [a claimant] can still do despite [his] limitations." *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). Plaintiff argues that he is entitled to relief because the ALJ's RFC assessment is not supported by substantial evidence. Specifically,

Plaintiff argues that the ALJ erred by failing to consider "all relevant evidence in the record."

First, Plaintiff's argument that the ALJ failed to consider all the evidence of record is belied by even a cursory review of the ALJ's decision. The ALJ discussed in great detail the evidence of record. Moreover, the record supports the ALJ's RFC assessment.

Treatment notes dated September 4, 2019, indicate that Plaintiff was experiencing anxiety because he was "missing too much work" and "making mistakes at work" due to his lack of sleep and medication side effects. (PageID.498). The doctor noted that Plaintiff was only using his prescribed CPAP machine intermittently. (PageID.497). Plaintiff was encouraged to use his CPAP machine regularly to lessen his restless leg syndrome symptoms. (*Id.*).

On November 19, 2019, Plaintiff reported that he had discontinued working, which had lessened his anxiety. (PageID.506). Plaintiff reported that he was using his CPAP machine more regularly and was experiencing "leg movements that keep him up" only 1-2 nights weekly. (*Id.*). Plaintiff reported that his medication regimen was "beneficial." (*Id.*). Plaintiff was instructed to obtain an updated CPAP machine and adjust the settings to increase its effectiveness. (PageID.508).

On August 19, 2020, Plaintiff was examined by Dr. Cornelius Robens. (PageID.489-91). Plaintiff reported that his restless leg syndrome was causing him difficulty sleeping. (PageID.489). Plaintiff also noted that his medications were "providing a benefit [but] not completely controlling his symptoms." (PageID.489).

The doctor reported no findings, however, inconsistent with the ALJ's RFC assessment. (PageID.489-91). Plaintiff also reported that he was not experiencing anxiety or depression. (PageID.490).

Treatment notes dated August 24, 2020, indicate that Plaintiff is "not using CPAP continuously." (PageID.561). Treatment notes dated September 23, 2020, indicate that Plaintiff "is using his CPAP less since the last visit." (PageID.528). Plaintiff was instructed on the importance of treating his sleep apnea. (PageID.530). On December 22, 2020, Plaintiff reported that he was "not doing well" because he was "not able to sleep more than an hour without interruption." (PageID.776). Dr. Robens modified Plaintiff's medication regimen. (PageID.777).

On January 20, 2021, Plaintiff participated in neuropsychological testing the results of which indicated that he possessed an IQ in the "average range," but exhibited "significant difficulties with working memory, as well as cognitive processing speed." (PageID.814-21). The examiner concluded that Plaintiff was experiencing "mild cognitive impairment." (PageID.820).

On January 26, 2021, Plaintiff reported that his new medication regimen was "effective" and described his recent sleep as "well controlled." (PageID.824). On February 17, 2021, Plaintiff reported that "his symptoms have improved since his last appointment." (PageID.842). Treatment notes dated March 29, 2021, indicate that Plaintiff was not presently participating in treatment for his sleep apnea. (PageID.874-75).

On April 5, 2021, Plaintiff reported that he "does not sleep at all." (PageID.856). Plaintiff also reported that he was "exercising regularly at the Y." (*Id.*). On June 1, 2021, Plaintiff reported that he "will be getting a new CPAP machine, and he will try to use it more consistently." (PageID.955). Treatment notes dates July 1, 2021, indicate that Plaintiff was "mostly compliant" with using his CPAP machine. (PageID.1013). On September 14, 2021, Plaintiff reported that he "will be busy playing some musical gigs in the next month." (PageID.1089).

On November 8, 2021, Plaintiff reported that his restless leg syndrome symptoms "have generally remained stable." (PageID.1086). The doctor characterized Plaintiff's restless leg syndrome as "reasonably well controlled." (PageID.1087). On February 10, 2022, Plaintiff reported that his restless leg syndrome symptoms "have overall remained stable." (PageID.1136). On March 14, 2022, Plaintiff reported that he was regularly using his CPAP machine. (PageID.1199).

This evidence, as the ALJ concluded, supports the conclusion that Plaintiff is capable of performing a limited range of work. Regarding Plaintiff's anxiety and depression, the evidence likewise supports the ALJ's RFC assessment. The results of mental status examinations were generally unremarkable and Plaintiff reported that therapy and medication were successful in reducing his symptoms. (PageID.786-813, 824-32, 842-53, 860, 1026-65, 1070, 1089-1105, 1161-62, 1198).

The ALJ is tasked with determining a claimant's RFC. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c). While the ALJ may not "play doctor" and substitute his

own opinion for that of a medical professional, the ALJ is not required to tailor his RFC assessment to any particular opinion or item of medical evidence. *See, e.g., Poe v. Commissioner of Social Security*, 342 Fed. Appx. 149, 157 (6th Cir., Aug. 18, 2009). Instead, the ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity." *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004).

This is precisely what the ALJ did and the ALJ's RFC assessment is supported by substantial evidence. The Court does not question that Plaintiff experiences significant limitations, however, the ALJ's RFC finding sufficiently accounts for such by restricting Plaintiff to a very limited range of work. In sum, the ALJ's RFC assessment is supported by substantial evidence. Plaintiff's argument is essentially that the ALJ should have weighed and evaluated the evidence differently. This is not grounds for relief, however. Accordingly, this argument is rejected.

## II. Vocational Expert Testimony

As noted above, the ALJ, based upon the testimony of a vocational expert, determined that there existed a significant number of jobs which Plaintiff could perform despite his limitations. Plaintiff argues that the ALJ improperly relied on the vocational expert's testimony. Specifically, Plaintiff argues that the ALJ failed to properly question the vocational expert regarding a conflict between his testimony and the Dictionary of Occupational Titles (DOT).

Social Security Ruling 00-04p provides that whenever a vocational expert "provides evidence about the requirements of a job or occupation, the [ALJ] has an affirmative responsibility to ask about any possible conflict between that [vocational expert] evidence and information provided in the DOT [Dictionary of Occupational Titles]." Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, SSR 00-4p, 2000 WL 1898704 at *4 (S.S.R., Dec. 4, 2000).

Following the vocational expert's testimony, the ALJ asked the vocational expert if his testimony was consistent with the DOT. (PageID.103). The vocational expert responded that his testimony was consistent with the DOT except that the DOT does not address the issue of a claimant being "off task" during the workday. (*Id.*). Regarding this circumstance, the vocational expert testified he supplemented his testimony "with [his] experience." (*Id.*). Plaintiff's counsel was afforded the opportunity to question the vocational expert on this matter but counsel declined. (*Id.*).

The vocational expert did not testify that there existed a conflict between his testimony and the DOT. Rather, the vocational expert testified that the DOT did not address a particular matter in which case he relied on his experience for support. As courts recognize, this latter circumstance does not constitute a *conflict* with the DOT requiring further examination but is merely an example of the vocational expert *supplementing* the DOT. *See, e.g,. Forrest v. Commissioner of Social Security*, 591 Fed. Appx. 359, 364 (6th Cir., Nov. 17, 2014) (no further examination of the vocational

-10-

expert required where the vocational expert's testimony "supplemented, rather than conflicted with, DOT job descriptions"). Thus, the ALJ did not err by failing to question the vocational expert regarding any conflict between his testimony and the DOT. Accordingly, this argument is rejected.

## **CONCLUSION**

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be affirmed.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: July 15, 2024

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge